# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ROBINSON, Minors.

UNPUBLISHED
February 16, 2017

No. 332844
Muskegon Circuit Court
Family Division
LC No. 15-044043-NA

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Respondent mother appeals as of right the trial court order terminating her parental rights to the minor children CR, ZR, and BR, under MCL 712A.19b(c)(*i*), (g), and (j). We affirm.

The trial court placed the children in the care of the Muskegon Department of Health and Human Services (DHHS) in February 2015 after respondent's boyfriend sent CR and ZR unsupervised to their school bus stop without appropriate winter clothing on a day when school was cancelled due to low temperatures. The children returned home after more than an hour. When they arrived home, they were locked out of the house and were unable to wake any adult inside. Eventually a neighbor heard the children crying and knocking on the door of the home, and the neighbor called law enforcement. After 15 minutes of knocking, officers were finally able to wake respondent.

When respondent met with law enforcement, she initially lied and said her boyfriend was not in the home. Officers eventually discovered the boyfriend in the home and arrested him on the basis of two outstanding warrants. Respondent also admitted to smoking marijuana and to consuming Xanax, Norco, and methadone.

Following their removal, the DHHS placed the children in foster homes. At the time of their placement, CR and ZR both had lice and their teeth were gray and black. While in their foster placements, CR and ZR disclosed to the DHHS caseworker that respondent's boyfriend frequently struck them in their faces with his belt and made their noses bleed. Additionally, BR displayed significant developmental issues, including a droopy eye, muffled and incoherent speech, and frequent behavioral issues.

The DHHS referred respondent to weekly counseling sessions and drug screens and, on her own initiative, respondent began attending parenting classes and Alcoholics Anonymous meetings. Respondent initially showed some progress with these services. Respondent provided

-1-

mostly clean drug screens during the early months following the removal and achieved her one-month sober designation from Alcoholics Anonymous. Respondent also completed her parenting classes and worked with a DHHS parent mentor who reported that respondent was showing some progress in her parenting skills.

Respondent regularly attended her supervised parenting time, which was initially supervised by her mother. After respondent, however, lost ZR at a shopping mall during one of these visits and allegedly instructed the child to not tell the DHHS about the incident, the trial court ordered that respondent's mother could no longer supervise respondent's parenting time. Respondent achieved unsupervised parenting time in June 2015 after providing the court with three consecutive clean drug screens but, thereafter, her progress declined. Her unsupervised parenting time was revoked after just three weeks when respondent brought the children into contact with her boyfriend on two occasions despite being instructed by the DHHS not to do so.

Shortly thereafter, respondent's interaction with the DHHS began to deteriorate. Respondent walked out of a July 13, 2015 family-time meeting after just 15 minutes and sent her caseworker numerous belligerent text messages over the next several weeks. Respondent called her caseworker names, implied that the caseworker was on drugs, and accused the caseworker of purposefully keeping her from her children. About this time, respondent also disengaged from her services. Respondent stopped attending AA meetings in June 2015, did not attend counseling from September 2015 to January 2016, and failed to appear for most drug screens from October 2015 to January 2016. When she did appear for drug screens in January 2016, respondent twice tested positive for marijuana.

Between October 2015 and December 2015 respondent attended only four of nine scheduled parenting time visits. During the visits she did attend, respondent was often more engaged with her phone than her children. When she did interact with the children, respondent made inappropriate comments, including telling the children that she did not like her caseworker and telling CV and ZV that BV should not attend the visits because she did not care about him. Following these visits, the children's behavior declined.

The trial court held termination hearings in February and March 2016, and, in April 2016, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j).

## I. REUNIFICATION SERVICES

On appeal, respondent first argues that the DHHS did not make reasonable efforts to promote reunification with the children. We disagree.

This Court reviews a preserved issue regarding reasonable efforts for clear error. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "When a child is removed from a parent's custody, the agency charged with the care of the child is [usually] required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "The adequacy of the [DHHS]'s efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "[A trial] court is not

required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *Id.* at 105 (quotation marks and citation removed).

Respondent argues that the DHHS failed to provide her with proper reunification services because it did not provide her with the services of a psychiatrist. The DHHS "must make reasonable efforts to rectify conditions, to reunify families, and to avoid termination of parental rights." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008). It has no duty, however, to provide every conceivable service. See *In re Terry*, 240 Mich App 14, 27-28; 610 NW2d 563 (2000). Moreover, "[w]hile the [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

After respondent's mental health was brought to the attention of the trial court in October 2015, the DHHS arranged for mother to have a psychological evaluation completed to assess her mental health needs. Psychologists evaluated respondent twice. Respondent first arranged an evaluation by a psychologist outside the DHHS's referral. Then, a few months later, respondent finally completed an evaluation with the DHHS-recommended psychologist. Neither psychological evaluation recommended the services of a psychiatrist and, by the time mother completed the DHHS-recommended psychological evaluation, the DHHS was proceeding with termination and was not required to provide any further reunification services. *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). The psychologists' reports make clear that the DHHS was not required to provide respondent with psychiatric services. Moreover, any failure to provide these services cannot form the basis for respondent's appeal because respondent's own delay would have precluded her from receiving these services before the DHHS filed its termination petition.

At the termination hearing, the DHHS caseworker testified that the DHHS offered respondent drug screening, supervised parenting time, transportation assistance, a psychological evaluation, participation in a parent-mentor program, housing assistance, and counseling. From at least October 2015 until January 2016, respondent repeatedly demonstrated her unwillingness to cooperate with the DHHS and its services.[1] Considering the extent of services offered by the DHHS and respondent's consistent failure to participate in these services, we conclude that the trial court did not clearly err by finding that the DHHS made reasonable efforts to reunite respondent with her children.

---

[1] Insofar as mother argues that she was forced to obtain services without assistance from the DHHS, "[t]he fact that respondent sought treatment independently in no way compels the conclusion that [the DHHS's] efforts toward reunification were not reasonable, and, more to the point, does not suggest that respondent would have fared better if the worker had offered those additional services to [her]." *In re Fried*, 266 Mich App at 543.

## II. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that the trial court erred when it found that clear and convincing evidence supported terminating her parental rights. We disagree.

To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met by clear and convincing evidence. *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991). "We review for clear error . . . the court's decision that a ground for termination has been proven by clear and convincing evidence." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding is "clearly erroneous where the reviewing court is left with a definite and firm conviction that a mistake has been made." *In re Terry*, 240 Mich App at 22.

Respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court removed the children from respondent's care because respondent abused substances, exposed the children to her abusive boyfriend, and failed to provide for the children's proper care and guidance. Although respondent initially showed some progress on the services

offered her, from at least October 2015 until the time of the termination hearing, respondent refused to engage meaningfully in the services offered her. Respondent failed to attend most of her drug screenings and tested positive for marijuana on other occasions. Respondent did not attend counseling and repeatedly berated her caseworkers. Twelve months after the children's removal, respondent had yet to maintain unsupervised visitation with the children. During the brief period that respondent exercised unsupervised parenting time, respondent twice exposed the children to her abusive boyfriend despite clear direction not to do so. Between October 2015 and December 2015, respondent failed to attend half of her scheduled parenting time visits and, during the visits she did attend, demonstrated poor parenting skills that appear to have caused her children to suffer behavioral setbacks with their foster placement.

Accordingly, respondent did not accomplish "any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). Because respondent refused to engage in the majority of services offered by the DHHS during the twelve months following her children's removal from her care, the trial court properly concluded that grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App at 461. Nonetheless, because this Court has held "that a parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody for the child," *In re JK*, 468 Mich 202, 214; 661 NW2d 216, 223 (2003), we conclude that that the trial court properly determined that grounds also existed under MCL 712A.19b(3)(g) to terminate respondent's parental rights. Additionally, respondent's failure to address adequately her issues with substance abuse, mental health, and parenting skills, renders harm to the children reasonably likely if they were to return to her care. Indeed, the psychologist that completed her second evaluation stated that respondent presented a risk to the children based on her personality deficits, ongoing mood problems, and unresolved substance abuse issues. Accordingly, we conclude that the trial court also properly determined that MCL 712A.19b(3)(j) supported termination of respondent's parental rights.

III. BEST INTERESTS OF THE CHILDREN

Finally, respondent argues that the trial court erred when it found that termination was in the children's best interests. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Because proof of a statutory ground for termination establishes the state's substantial "interest in protecting the welfare of the child," *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013), the trial court need not find clear and convincing evidence that termination is in the child's best interests. Rather, "whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence" *Id.* at 90.

The trial court may consider the record as a whole in determining whether termination is in the child's best interests. *In re Trejo*, 462 Mich at 354. The trial court must "state on the record or in writing its findings of fact and conclusions of law with respect to whether or not parental rights should be terminated." MCL 712A.19b(1). When deciding whether termination is in the child's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). The trial court may also properly consider evidence concerning the length of time the child has been in foster care and whether the child could be returned to the parent "within the foreseeable future, if at all." *In re Frey*, 297 Mich App at 248-249. "We review for clear error . . . the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich at 356–57.

In this case, although the children appear to have been initially bonded with respondent, respondent has failed to maintain unsupervised parenting time and more recently failed to attend many of the supervised visits. When present, respondent frequently acted inappropriately causing the children behavioral issues in their foster placement. Accordingly, respondent's parenting time was suspended in December 2015.

From at least October 2015 until the DHHS filed the termination petition, respondent refused to engage meaningfully in the services provided to her. As a result, respondent failed to address adequately her issues with substance abuse, mental health, and parenting skills by the time of the termination hearing. Although respondent claims to have taken steps towards addressing these issues since the time of the termination petition, respondent had previously shown limited progress on her services only to disengage from those services shortly thereafter. Given that the children have shown progress in their foster placement and appear to be bonded to their foster family, we cannot conclude that the trial court erred by determining that termination was in the children's best interests despite respondent's recent efforts.

Respondent also argues that the trial court erred by not considering the best interests of each child separately. The child is the "primary" intended beneficiary of the best-interests determination, *In re Trejo*, 462 Mich at 356, and therefore, the trial court must consider the best interests of each child individually. *In re Olive/Metts Minors*, 297 Mich App at 42. The trial court is only required, however, to make explicit "factual findings concerning each child's best interests" when "the best interests of the individual children *significantly* differ." *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014).

Respondent argues that the trial court was required to address each child's best interests separately because the children "have different developmental needs." In her brief on appeal, however, respondent has provided this Court with no support for that argument. "It is not sufficient for a party simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis of his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Accordingly, we cannot conclude that the trial court erred by not considering the best interests of the children separately.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle